Case No: 18-10095-cgm

Written Response to Notice of Dismissal Dated 8/27/2019

Dear Judge Morris:

My name is Lee Jonathan Wong. I go by "Jonathan". My wife is Dinine. I am writing today to ask you to please not allow the dismissal that occurred in August of my bankruptcy case.

I have a terminal neurological disease called Multiple System Atrophy (MSA). It is a rare disease that I had never even heard of until my diagnosis. It presents as similar to ALS mixed with Parkinson's. I became ill about 7 or 8 years ago and was diagnosed about five years ago. Part of my disease causes executive functioning issues and most of my disease causes uncontrollable muscle loss. My brain sends the signals but my limbs and body parts do not receive them. I am fully bed /wheelchair bound with a feeding tube and catheter and in patient full time at Governeur Hospital on Madison Street. I receive top notch care, but that doesn't always come without my wife advocating for me and it doesn't seem to matter to my disease as it continues to make me a prisoner of a weakened body that no longer matches my mind. I use a Tobii Dynavox apparatus to communicate as my voice box is paralyzed. I can move my fingers occasionally and that is all. I require two people to use a lift to put me in and out of bed, change me, clean me and dress me. It is not a good life, as I'm sure you can imagine. I am suffering with my disease, but I am not the only one. My wife and kids have suffered as well in that they have lost nearly every structure of stability since my disease took over and as a family we moved to NYC so that I could be near my parents and better health care options. I've asked my wife to explain the rest to you as it takes me a long time to complete sentences on my Tobii and she is the one who has had to bear the full brunt of the ensuing financial problems brought on by my disease. Dinine starts here:

"I found out our property was in foreclosure by accident and was, of course, devastated. My husband did not know how to tell me that he was not working full hours at his job and not paying all the bills as I had thought. After the shock wore off, he told me he had scheduled a phone appointment with an attorney- Irene Costello. We explained our situation to Irene over the phone. Irene said, "Jonathan, Dinine, I can help you - I can help you both by filing a bankruptcy to protect you from losing your home." She did just that and the foundation of trust was built. We complied with everything that was asked of us and began making payments directly out of our bank account to the Trustee at the time, Jeffrey Sapir. After about two years' time, we received a notice that our case was dismissed. Panicked, I called Irene and she apologized and said that she forgot to let us know that this was standard when there is a change in Trustee, and that the new Trustee would require a new filing. We continued to comply, sending payments as we had done from the start. I found out months later that all of our payments were not being accepted by the new Trustee as she was demanding a bank check and would not accept my electronic payment directly from my bank. This caused weeks and weeks of hardship as the electronic payments "left" my bank account as soon as I hit "send" and the money was immediately drafted out and gone. It took a couple of months to track it down and get the money

[deposited] back into the account. The new Trustee's demand for payment by bank check continued to wreak havoc on my customary bill paying—which caused me increasing amounts of stress and concern as it is not a simple or easy task to obtain a bank check each month. Especially when you are paying all of the bills when the SSDI payments hit our account. With two busy kids and a terminally-ill husband, going through the process of securing a bank check became the most avoided task of my life-wrongfully so, but still I faltered. I tried, but must admit that I failed more than I was successful.

Around this time, my then 12 ½ year-old daughter was losing her ability to "be resilient." She became increasingly depressed concerning our life in a cramped NYC apartment, losing her father at her dance, sport and school events, missing her home and longing for space--she began to have what the school counselor and our pediatrician called "suicide ideation." The more I tried to hold our family together, the more we were all falling apart. My kids' involvement in competitive sports has been a saving grace of sorts - for my daughter being part of the volleyball team provides some comfort and sense of belonging and stability, and my son has continued to play baseball. I've struggled to keep my daughter busy and fulfilled enough so that she would not think she should hurt herself or God forbid, end her life. As our financial situation worsened, I began "borrowing" the rent money from our shared tenant in Virginia after she would deposit it in the bank. Despite my job hunting and application filling and recruitment attending, I am not employed. My last job was over four years' ago- a six month stint in project work. Volleyball tournaments required more money than I have. Sports gear, coach payments, etc. In the spring I called Irene and let her know that I was very behind and apologized to her. I told Irene that I would be making some mental changes and that I would be speaking to my dad and bringing the Trustee payments current. I attended a debtors' workshop and retreat at a convent over the summer to come to terms with some of my mental challenges. I reached out to my parents and asked them to invest in my children so that I can keep our home. They agreed. Everything was on track financially for us to continue the fight, successfully. But, the Trustee filed for a dismissal in May. Around this time, as the end of middle school was approaching for my daughter, she was openly writing about killing herself. I became obsessed with throwing all of my energy at getting her the help she needed. Though she has decent kids' insurance; behavioral health is a problem and getting through the intense barriers to being seen in NYC(6 week wait times, not seeing new patients, not taking our insurance, not seeing teens, etc.) took nearly everything I have without the money just pay the fees of assessments and doctor visits.

Throughout this entire period of time, Rushmore continued to inundate us with mailed letters and invoices containing false details of fees, false insurance coverage fees, and the like. Each time I spoke with Irene, we discussed the feasibility of pursuing the bank and their attorneys to put an end to this harassment. Though I acknowledge I made a mistake in falling behind, Rushmore's actions were far more dangerous and unscrupulous. Irene and I discussed repeatedly my fear of Rushmore's recurring tactics because my research online consistently showed thousands of others in my same predicament - fighting to keep their home, but consistently battling false accounts of outrageous fees. I kept up with Insurance payments on the property as well as the home warranty, so I found Rushmore's illegitimate "Property Insurance Fee" the most offensive! I know that about three years ago this issue was presented in court and Rushmore refused to

provide a copy of the Insurance even after you requested they do so. I also know through Irene that you threatened to issue sanctions for the outrageous way in which Rushmore was conducting itself.

This July, Irene let me know in a text that she was leaving her firm, Cabanillas & Associates, and heading to a new firm, Wilson Eder, but that she would "take me with her if I wanted," as she had done when she left Shipkevich to join Cabanillas. I was very concerned and a little panicked but responded "YES," and thanked her for telling me. Around the middle of July I told Irene that it was going to be difficult for me to get proof of payment from my father until August since he is not technologically savvy and does not have a laptop or a phone that takes pictures. We discussed at length that the best thing would be for me to try to personally visit him in August and get the proof showing when he sent the payment to the Trustee. Irene and I spoke again in July before I went to the retreat at the convent; and she told me that you would approve the adjournment, but that she did not yet have a court date. She asked me to complete the Loss Mitigation package, and I have it nearly finished. I repeatedly expressed to Irene how scared and nervous I was. The more I looked for good news about the situation with Rushmore, the less encouraged I became learning of how many families have ultimately lost their home, unable to fight back against Rushmore's tactics. During our final voice call in July, Irene told me there were "one or two conflicts" that she was resolving with her new boss at Wilson Eder to be able to fully take our file with her from Cabanillas, and that the court was off in the last two weeks of August anyway, so we would most likely get a date in September. I reached out to Irene several times in August to find out the new date and to inquire about the new retainer agreement with Wilson Eder, and she did not answer my texts as was her custom.

Just last week, my son brought me mail that had been delivered to my in-laws by mistake. The Motion for Dismissal granted by Judge Morris, dated August 27th was a shock! I immediately reached out to Irene for some explanation. I have reached out every day since September 4th. By email, by text to her personal cell phone, by calling Wilson Eder and getting her voice mail, sometimes twice in one day. I asked the secretary at Wilson Eder if everything was ok and if she was working and she assured me that she was and that she would return my message as soon as she could. Though I pleaded for some response, I still have not heard back from her, so I don't know why she has not called. I thought we had a great working relationship and I truly feel that Irene understands the predicament she is leaving my family with. She knows the trauma of my husband's illness to my children first hand. She knows how badly we all want to return to my little house in Virginia, mostly she knows how fearful I am of being unprotected and in Rushmore's sights. Last week, I called your office and spoke with a clerk named Brenda. I told her that I wasn't sure what to do next, but that I had the payment ready and could not reach my lawyer who has cut off all communication with me without explanation. Brenda advised that I should write you a letter explaining what had happened. I believe I may only have until September 27th to get a new case refiled and I'm not sure how to do this. Two lawyers I spoke with already will not take the case because they said that Irene "made mistakes" and they don't want to inherit those mistakes. I am not sure what they are referring to. One lawyer told me he wouldn't take the case because there were "too many adjournments" for Loss Mitigation- which

was shocking and surprising since Irene and I recently started working on completing that package. Once again, I am unclear.

I'm sure this letter is longer than you would have preferred, I apologize, but I am hoping the detail can help shed light on how we've come to this point. It is most definitely not from a lack of willingness to comply, but more from an average person facing above average challenges, with limited help, support and resources, while consistently trying to find more time, more energy, more money to deal with it all---and unable to fight off a bank with seemingly more than enough time, energy, and resource to grind down people like Jonathan and me, and wait it out until we eventually and inevitably, give up. I know that there has to be another way. I am the only advocate for my husband at the hospital, for my children at school, and for the four of us as a family. Without me, this all disintegrates into nothingness, where there once was a beautiful hopeful family. I cannot fail them anymore than I already have. I am renewed in my fight and am eager to get a new case refiled and come to some agreement regarding Loss Mitigation. We are not ready to give up, we have lost so much to my husband's disease that I do not want to lose my only home as well." Thank you- Dinine Wong

Respectfully,

*[signature]*
Lee Jonathan Wong